Milo Winchell, Plaintiff in Error, *v.* George Strong, Defendant in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

In an action for slander, a party may show that he offered an explanation of the offensive words, if the explanation was a part of the same conversation and before the same auditory, and in reference to the same subject.

The declaration is in case for slander, and comprises two counts.

The first count states that in a colloquium on 16th May, 1855, with the defendant, in the hearing of one Stephen Lamb and others, the plaintiff falsely and maliciously spoke and published of and concerning the defendant, the false, scandalous, malicious and defamatory words following, that is to say: "You," meaning the said defendant, "stole the timber to build the Alison bridge. You," meaning the defendant, "stole the timber to build the Alison bridge, and I can prove it."

The second count states the words to be: "You," meaning the defendant, "stole the timber to build the bridge with," meaning a certain bridge, commonly called the Alison bridge, "and I can prove it without going out of this shop," meaning the shop in which certain citizens and the plaintiff and defendant then were. Damages $5,000.

Plea, not guilty, and *similiter.*

The trial was had before a jury, in the Cook county Court of Common Pleas, at October term, 1855, and a verdict of guilty rendered with $500 damages, J. M. Wilson, Judge, presiding.

At the trial the defendant produced A. N. Peets, who, on his direct examination, testified that he knew the parties; was their neighbor, and had known them a number of years; he was at Mr. Roquet's last spring when the parties came there; they were conversing about bridges; William Strong said he had given $50 toward the Alison bridge; defendant said, "you stole the timber to build it with;" repeated it twice; said he could prove it; defendant told him that he did not believe it; plaintiff said he did, and he could prove it; defendant said he would prosecute him; Winchell repeated it; Mr. Woolworth, Mr. Lamb, two Mr. Roquets, Mr. Edwards and witness, were present; there might have been some others; defendant and plaintiff were there when witness got there; they were pretty much through talking on the subject when witness left; it was fifteen or twenty minutes before witness left, which was fifteen or twenty minutes after the charges.

On cross-examination, the witness testified that Winchell did not say where he stole the timber from; did not say the stealing consisted in cutting on other people's land, and cutting the timber without their knowledge or consent; that they were talking about bridges when witness got there; Mr. Strong called them to witness what Mr. Winchell said; when witness entered, both parties were cool; that, at the same meeting, and after the speaking of the words, but before witness left the meeting, plaintiff made a statement to defendant respecting his meaning of the words; that such statement might have been fifteen or twenty minutes after the speaking of the words. Whereupon defendant's counsel objected to the admission of said statement in evidence. Plaintiff's counsel then stated that the statement he intended to prove, was as follows: " What I mean to be understood as saying, is this: that you entered upon other people's land and cut down and hauled away their timber without their knowledge or consent; if the law calls that stealing, I call that stealing; if the law calls it trespass, I call it trespass; and he also stated that, on the defence, he could prove the truth of the fact stated, namely: the cutting down and hauling away of the timber to build the above bridge with, without the knowledge or consent of the owner." The objection was sustained and exception taken.

The defendant also produced E. A. Allen, who testified that he knew the parties; had resided at Wheeling several years; was a little acquainted with the parties; Mr. Strong said he had built the Alison bridge for so much; Mr. Winchell said "yes, and made $100 out of it, and stole the timber to build it with;" he stated it two or three times; there were quite a number of persons present; could not tell how many.

On cross-examination, witness stated he was present at the beginning of the meeting; Winchell claimed he had property in the bridge; they thought of vacating the Winchell bridge; Mr. Strong did not contradict him; he said he thought when the donation was made it became the property of the town; when plaintiff first accused defendant with stealing the timber to build the bridge with, I think Mr. Strong told him he was excited, and could not mean what he said; Mr. Winchell talked loud; had not been loud talk previous to the accusation; Mr. Winchell did not say, in this conversation, that Strong had entered on other people's land and stole the timber; and if the law called it stealing, he did; and if the law did not, he did not; but he did make such a statement fifteen or twenty minutes afterward.

The defendant also produced Mr. Woolworth, who testified that he had lived in Wheeling some time, and knew the parties; was present at the meeting spoken of; Mr. Winchell said Mr. Strong was a man of not much public spirit; plaintiff claimed a part of the bridge they were going to vacate; Mr. Strong thought it belonged to the public; Winchell said, "You stole all the timber to build the Alison bridge with;" Mr. Strong said, "You do not mean that;" plaintiff repeated it two or three times; said he could prove it.

On cross-examination, witness stated that plaintiff did not explain what he meant by charging defendant with stealing—he did not in the same conversation—he did fifteen or twenty minutes after; the plaintiff objected to such explanation, as not being in the same conversation; he said nothing in that conversation about other people's land. Witness did not understand Winchell to mean, by the charge, either that Strong cut down growing timber or took it after it was down.

On reëxamination, witness testified that he understood defendant to mean stealing, or he would not have said so; he did not understand him as meaning any thing about cutting growing timber.

The defendant also produced Mr. Lamb, who testified: That he had lived at Wheeling since 1840; parties were there when he went; he was present at the meeting; plaintiff said Strong had stole the timber to build the bridge, or a bridge; Strong denied the charge; Winchell said he had stole the timber, and he could prove it; some few minutes after, he qualified it; Mr. Strong then said, "You try to back out of it;" it was some ten or fifteen minutes; he had accused him of stealing the timber, as many as three times, before this; there was nothing about standing timber at the beginning; that Mr. Winchell owned a farm, and was represented to be worth ten or fifteen thousand dollars.

On cross-examination, he said both were some excited; not apparently so until after the accusation.

On the defence, the plaintiff in error produced, as a witness, Francis Edwards, who testified that he resided at Wheeling; was present at the meeting—the last part of it; Mr. Strong told Winchell he had lost $50 or $100 in building the Alison bridge; Winchell said he made $100, and stole part of the timber to build it with ; Mr. Strong said to the bystanders, "I want you all to take notice, he accuses me of stealing;" Mr. Winchell immediately turned to them and said, "I mean to be understood, that Mr. Strong entered upon other people's land and cut and hauled timber to build it with, without their knowledge or consent."

The plaintiff also produced George Tallner, who corroborated the evidence of defendant's witnesses.

The plaintiff also produced John Roquet, who testified that he was present at the meeting; that Winchell said Strong had stole the timber to build the Alison bridge of, and he could prove it; Strong told him he would put him in a way to prove; Winchell then said, if the law called it stealing, he did; he had been on another man's land and cut the timber to build the bridge with; they were excited.

The defendant then recalled Allen, Peet, Woolworth and Lamb, who all testified, that Strong did not call Winchell a liar. On the part of the defendant, the following instructions were asked and given, and excepted to.

1st. If the jury shall believe, from the evidence, that the plaintiff made the charge against the defendant, substantially as laid in the declaration, and thereby intended to charge upon the plaintiff the crime of stealing, the defendant is entitled to recover in this action; and the jury may, in estimating the damages, take into consideration the plaintiff's pecuniary circumstances, and may give, in their discretion, exemplary damages.

2nd. Although the jury shall believe, from the evidence, that, after the defendant made the charge stated in the declaration and was threatened with a suit by the plaintiff, the plaintiff made the explanation stated by the witness, Edwards, yet, if they shall further believe it was not intended as an honest retraction of the charge of stealing, but rather for his own protection against the consequences of his previous charge, it ought not to mitigate the damages.

On the part of the plaintiff, the following instructions were asked and given:

1st. That if the words were spoken in the heat of passion, the law is for plaintiff.

2nd. That the words impute a felony; in law, cutting down

and taking away growing timber, is not a felony; the language of defendant is to be taken by the jury in the sense he meant to use it; and that, if plaintiff intended to charge a cutting down and carrying away growing timber, there is a fatal variance between the declaration and proof, and the law is for plaintiff.

DAVIS and MARTIN, Attorneys for Plaintiff in Error.

G. GOODRICH, for Defendant in Error.

CATON, J. That the explanation which the defendant below offered to prove on the trial, and which was rejected, was proper, as tending to explain the meaning of the words uttered as charged in the declaration, there can be no doubt, if that explanation was made in such connection with the charge as to form a part of the same transaction or interview. To determine this properly, may frequently be a matter of some difficulty. The explanation should no doubt be a part of the same interview or conversation with the charge, but it need not be in the same breath or sentence, nor yet in the same speech. Regard must be had to the nature and character of the conversation, in order to determine the question. Where substantially the same auditors are present and the subject matter, in the discussion of which the charge is made, is still under consideration or dispute, the whole must be considered as the same conversation, and an explanation made in any part of it is so connected with the charge as to be admissible, although a very considerable time and much conversation may intervene between the charge and explanation. This may be especially so, when the charge is made at a public meeting where the subject, in reference to which the charge is made, is undergoing discussion, as was the case here. In such a case, while the particular subject is under discussion, and the parties are present and taking part in it, the conversation may be said to continue.

This charge was made at a public meeting where the subject of a certain bridge, which Strong had built, was under discussion. In the course of the discussion a controversy arose between these parties, in which the defendant accused Strong of stealing the timber, with which he had built the bridge. The witness states, " That at the same meeting, and after the speaking of the words, but before witness left the meeting, defendant made a statement to plaintiff respecting the meaning of the words. That such statement might have been fifteen or twenty minutes after the speaking of the words." This statement the defendant offered to prove, but it was ruled out by the court. In this we think the court erred. We are well satisfied that it should have gone

to the jury as a part of the same transaction or conversation in which the charge was made, and that the statement and charge should both have been considered by the jury together, for the purpose of ascertaining what was the real intention of the defendant when he used the words charged. If the jury should believe that the defendant only intended to charge the plaintiff with a trespass, and so explained himself to the party and those who heard the original charge, then, the whole being taken together, the averments in the declaration were not sustained; but if the jury should believe that the defendant, when he uttered the words, actually intended to charge him with a larceny, and that he subsequently changed his mind as to what charge he would make against the plaintiff, and for the purpose of avoiding the responsibility of the original charge, and to falsely create the impression that he, all the time, intended to charge only a trespass, he made the statement which he offered to prove, then such statement or explanation would not change the legal effect of the original charge. The words as uttered, with the actual intent to charge a felony would still be actionable. We think the testimony should have been admitted.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*